UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, AND ANNUITY FUNDS and
TRUSTEES OF THE LOCAL 1010
APPRENTICESHIP, SKILL, IMPROVEMENT,
AND TRAINING FUND,

       Plaintiffs,       **REPORT & RECOMMENDATION**
                   **21 CV 3853 (FB)(LB)**

  -against-

KORE CONTRACTING CORP.,

       Defendant.
----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

   Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds ("Pavers Fund"), and Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund ("Local 1010 Fund"), (collectively, "plaintiffs" or "the Funds") bring this action against defendant Kore Contracting Corp. ("Kore") pursuant to the Employee Retirement Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq.* ("LMRA").

   Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 12. The Honorable Frederic Block referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted in part and denied in part. A default judgment in the amount of **$138,183.00**, plus daily prejudgment interest, should be entered against

defendant. The Court should deny plaintiffs' request for $73.00 for the cost of service without prejudice to supplementing the record with proof of payment within fourteen days of this Report and Recommendation.

## BACKGROUND[1]

The Funds are employee benefit plans as defined by Section 3(3) of ERISA, ECF No. 1 ("Compl.") ¶ 4 (citing 29 U.S.C. §§ 1002(3)). The Funds are employer and employee trustees of multiemployer labor-management trust funds and are organized and operated in accordance with Section 302(c) of the LMRA. Id. (citing 29 U.S.C. § 186(c)). Defendant Kore is an employer engaged in the construction business in New York. Id. ¶ 5. Defendant Kore is an employer within the meaning of Section 3(5) of ERISA, id. ¶ 5 (citing 29 U.S.C. § 1002(5)) and was an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, id. (citing 29 U.S.C. § 142).

Kore is bound by a collective bargaining agreement with the Highway, Road and Street Construction Laborers Local Union 1010 ("the Union"). Id. ¶ 6; see ECF No. 13-1, Kore Contracting Independent CBA 2018-2021 ("the CBA"). Under the terms of the CBA, Kore must remit benefit contributions, at specified rates, to the Funds and related entities on behalf of which the Funds act as collection agents, for all work performed within the trade and geographical jurisdiction of the Union (hereinafter referred to as "covered work"). Id. ¶ 7. The CBA also requires

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint, ECF No. 1, as well as documents incorporated by reference, and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant CBAs were deemed incorporated by reference into the complaint).

Kore to forward specified dues check-offs and other contributions to the Union for each hour of covered work performed by Kore's employees. Id. ¶ 8.

Pursuant to the CBA, plaintiffs conducted an audit of defendant's books and records for the period of October 1, 2018 through December 31, 2020 in order to determine whether defendant had made the required payments. Compl. ¶ 19; CBA at 30.[2] The audit revealed that defendant owed plaintiffs ERISA contributions of $52,990.47, union assessments and dues of $3,182.51, and dues checks-off dues of $1,656.96. Compl. ¶ 20. Plaintiffs allege that defendant is also liable for the $4,275.00 incurred for the cost of the audit. Id. ¶ 21; CBA at 30. Defendant has not paid any portion of the deficiency identified by the audit. Compl. ¶ 22.

The CBA also requires Kore to report to the Funds the number of hours of covered work performed by each employee and to pay specified contributions to the Funds in connection with all covered work. Id. ¶ 23–24, CBA at 25. Plaintiffs allege that defendant failed to submit its remittance and contribution reports from February 2021 through April 2021, and therefore owes an unknown amount of contributions for those months. Id. ¶¶ 9–10, 21. Plaintiffs also allege that defendant failed to remit $666.10 for October 2020 and owes interest on that late payment. Id. ¶¶ 25–26.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint commencing this action on July 9, 2021. ECF No. 1. Defendant was served with the summons and complaint on July 13, 2021, ECF No. 9. Defendant failed to answer and the Clerk of Court noted defendant's default pursuant to Federal Rule of Civil Procedure 55(a). ECF Nos. 10–11. Plaintiffs now move for a default judgment seeking damages

---

[2] The Court references the ECF page numbers for filed documents throughout this Report.

including the principal amount of delinquent contributions, union assessments and dues check-offs, interest on the delinquent contributions, liquidated damages, attorney's fees, and costs. ECF No. 12.

## DISCUSSION

### I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a

proper basis for liability and relief." <u>Rolls-Royce PLC v. Rolls-Royce USA, Inc.</u>, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." <u>Id.</u> (internal quotation marks and citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999) (citing <u>Transatlantic Marine Claims Agency, Inc.</u>, 109 F.3d at 111).

## II.    Defendant's Liability under ERISA and LMRA

The factual allegations in plaintiffs' complaint establish defendant's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Allegations in a complaint that an employer failed to make contributions to ERISA funds as required and failed to honor contractual obligations pursuant to a CBA sufficiently establish the employer's liability. <u>Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc.</u>, No. 08-CV-4362, 2009 WL 4891821, at * 4 (E.D.N.Y. Dec. 17, 2009) (finding liability under ERISA where a complaint alleged that an employer violated the terms of a CBA by not making payments to covered funds); <u>La Barbera v. Federal Metal & Glass Corp.</u>, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) (same).

5

Here, plaintiffs adequately establish defendant's liability for failing to make payments to the ERISA funds. The complaint alleges that the Funds are each "employment benefit plans" covered by ERISA. Compl. ¶ 1. Further, plaintiffs allege that Kore is bound by the CBA, agreed to make contributions to the ERISA funds, and failed to make the required contributions. Id. ¶¶ 6–7, 22. Plaintiffs' allegations that Kore violated the CBA and failed to contribute to the ERISA funds, which must be taken as true, satisfy plaintiffs' burden to establish defendant's liability. See La Barbera, 666 F. Supp. 2d at 348 (finding allegations that an employer violated a CBA and the requirements of ERISA to be sufficient to establish liability).

The LMRA states, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). This provision provides for an employer's liability for failing to remit union dues as required pursuant to a CBA. See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11-CV-5742, 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) (hereinafter Primo Brick) (citing Bricklayers Ins. & Welfare Fund v. Primo Build. Corp., No. 08-CV-4617, 2012 WL 6043294, at *2 (E.D.N.Y. Sept. 24, 2012)), report and recommendation adopted by 2013 WL 2120318 (E.D.N.Y. May 15, 2013).

Here, plaintiffs' complaint establishes Kore's liability under the LMRA. The complaint states that the CBA required Kore to remit benefit contributions to the Funds for each hour of covered work performed by Kore's employees and that Kore failed to remit those funds. Compl. ¶¶ 6–7, 15–16. Plaintiffs further allege that they are seeking the remittance of the amounts owed. Id. ¶ 23. These allegations of defendant's failure to comply with contractual allegations sufficiently

establishes defendant's liability under the LMRA. Primo Brick, 2013 WL 2120338, at *3; La Barbera, 666 F. Supp. 2d at 348 (finding that allegations of failure to abide by contractual allegations sufficiently state a claim for relief).

### III.     Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely on the affidavits, reports, and other documentary evidence submitted by plaintiffs. See e.g., McGovern & Co., LLC, 2019 WL 2271942, at *3 (listing the copious documentary evidence supporting plaintiffs' damages request, including declarations, shop steward reports, and rate schedules); Primo Brick, 2013 WL 2120338, at *4 (finding a hearing on damages unnecessary when plaintiffs provided multiple affirmations and additional documentary evidence); Precise Brick, Inc., 2009 WL 4891821, at *6 ("[W]here the plaintiffs have filed reasonably detailed

7

affidavits and exhibits pertaining to the damages incurred…the Court can make an informed recommendation regarding damages without and evidentiary hearing.").

Here, plaintiffs' motion is supported by the following:

1.  Declaration of Keith Loscalzo, an officer of the Union, ECF No. 13 ("Loscalzo Dec.") which attaches the parties' CBA, ECF No. 13-1 ("the CBA");

2.  Declaration of Joseph Montelle, Administrator of the Funds, ECF No. 14, ("Montelle Dec.") which attaches:
    a.  The parties' Trust Agreements, ECF No. 14-1;
    b.  The parties' Collection Policy, ECF No. 14-2 ("Collection Policy");
    c.  Defendant's remittance reports, ECF Nos. 14-3;
    d.  Three-month remittance average calculations, ECF No. 14-4;
    e.  Audit interest and liquidated damages calculations, ECF No. 14-5;
    f.  October 2020, February to June 2021 interest and liquidated damages calculations, ECF No. 14-6;

3.  Declaration of Katy Kabala, the Collections/Contributions/Reciprocity Coordinator for Zenith American Solutions Inc., the third-party administrator to the Funds, ECF No. 15 ("Kabala Dec."), which attaches:
    a.  Kore Discrepancy Status Report, ECF No. 15-1;
    b.  Kore Late Payment Interest Report, ECF No. 15-2;
    c.  Rate Sheet, ECF No. 15-3;

4.  Declaration of Robert Castiglia, a partner at the accounting firm Castiglia, LLP, which audited the Funds, ECF No. 16 ("Castiglia Dec.") attaching the Audit Report, ECF No. 16-1; and

5.  Affirmation of Adrianna Grancio, plaintiffs' counsel, ECF No. 17 ("Grancio Aff.") which attaches:
    a.  the Complaint, ECF No. 17-1;
    b.  an affidavit of service of process, ECF No. 17-2;
    c.  the certificate of default against defendant, ECF No. 17-3;
    d.  plaintiffs' counsel's contemporaneous time records, ECF No. 17-4; and
    e.  a proposed judgment, ECF No. 17-5.

The Court can calculate the appropriate damage award in this case based on these declarations and exhibits without a hearing.

Section 502 of ERISA provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of–
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. 1132(g)(2).

## A.    Unpaid ERISA Contributions

Pursuant to 29 U.S.C. § 1132(g)(2)(A), plaintiffs are entitled to recover unpaid contributions that defendant was required to make, but failed to pay, in accordance with the CBA.

### i.    Audit Findings

An audit of Kore covering the period October 1, 2018 to December 31, 2020 revealed that Kore failed to remit contributions to the funds in the amount of $52,990.47. Pls.' Mot. at 9; Castiglia Decl. ¶ 5. This amount, which plaintiffs seek to recover, was calculated by multiplying the hours worked by the covered union employees by the rates in effect for contribution to each fund. Castiglia Decl. ¶ 8. The audit found that Kore failed to remit contributions to the Funds for

1,157 regular hours, 67.5 overtime hours, and 16 double-time hours of covered work. Id. ¶ 7. The total amounts due to each Fund are summarized in Table A below:

**Table A**

| AUDIT PERIOD: October 1, 2018 to December 31, 2020 | |
|---|---|
| **ERISA Funds** | **Amount Due** |
| Pavers Welfare Fund | $18,145.40 |
| Pavers Vacation Fund | $5,680.38 |
| Pavers Pension Fund | $19,165.26 |
| Pavers Annuity Fund | $9,999.44 |
| **Total** | **$52,990.48**[3] |

See ECF No. 16-1 at 1–14. The Court has reviewed the calculations contained in the audit reports and finds that they adequately support the amount of unpaid contributions. Accordingly, plaintiffs should be awarded **$52,990.48** in unpaid contributions for the audit period.

### ii.   Projected Delinquency

Plaintiffs also seek unpaid contributions for February 2021 through June 2021. Defendant failed to submit its remittance and contribution reports during that period, and therefore owes an unknown amount of contributions for those months. Pls. Mem at 15–16. The Collection Policy provides:

> Where an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms . . . the Board [of Trustees of each Fund] may project as the amount of the delinquency the greater of (a) the average of the payments based on reports actually submitted by the employer for the last three (3) months for which payment and reports were submitted or (b) the average monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted.

Montelle Decl. at 10; Collection Policy at 9–10. Furthermore, the projected delinquency "may be

---

[3] The Court notes that this is one cent more than plaintiffs' calculation, which may be attributable to a rounding error.

used as a determination of payments due for each delinquent month, and may be used for the purposes of any lawsuit[.]" Collection Policy at 10. The Funds analyzed remittance forms submitted by defendant for three months to estimate the delinquent contributions. Montelle Decl. ¶¶ 15–19. Table B sets forth the calculation below:

**Table B**

| Month | Contribution Paid | Average Contribution of the Three Months |
|---|---|---|
| October 2020 | $17,049.60 | |
| December 2019 | $728.16 | $9,792.13 |
| November 2019 | $11,598.64 | |

See ECF Nos. 14-3, 14-4. Of the $9,792.13 average monthly contribution, $9,275.23 is the amount attributable to unpaid contributions based on the rates in effect.[4] Montelle Decl. ¶ 18. Accordingly, the Funds request $9,275.23 per month for February through June 2021, the five months that defendant was delinquent, for a total of $46,376.15. Having reviewed the parties' Collection Policy and the supporting documents submitted, it is respectfully recommended that the Court should award plaintiffs **$46,376.15** in unpaid contributions for February 2021 through June 2021.

### iii.    October 2020 Contribution

Plaintiffs seek contributions owed from October 2020 when defendant underpaid the Funds by $666.10. Pls. Mem. at 18. Plaintiffs' Third Party Administrator, who monitors the payment of benefit contributions, generated a discrepancy report which reflects that Kore utilized the incorrect rate sheet, thus miscalculating its obligation to the Funds for the period October 2020, and underpaying its contribution. Kabala Decl. ¶¶ 5–12. Having reviewed the Discrepancy Status

---

[4] The $516.90 remaining is attributed to unpaid union assessments, as discussed in part D. ii. of this section.

Report, ECF No. 15-1, it is respectfully recommended that the Court should award plaintiffs **$666.10** in unpaid contributions for October 2020.

## B. Interest

### i. Prejudgment Interest

Plaintiffs are entitled to prejudgment interest on the delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E). Plaintiffs calculate the daily interest rate by multiplying the contributions due for each period by 10% (the annual interest rate provided in the CBA), and then dividing the amount by 365 days. Montelle Decl. ¶ 24; Collection Policy at 3. The daily interest is then multiplied by the number of days the payment was overdue, through October 8, 2021, the date the instant motion was filed. The calculations for each period are shown below in Table C.

**Table C**

| Month | Contribution | Daily Interest | Days Late | Total Interest Due |
|---|---|---|---|---|
| **AUDIT PERIOD: October 1, 2018 to December 31, 2020** | | | | |
| April 2019 | $577.64 | $0.16 | 857 | $137.12 |
| May 2019 | $5,480.05 | $1.50 | 826 | $1,239.00 |
| June 2019 | $11,744.97 | $3.22 | 796 | $2,563.12 |
| July 2019 | $3,049.45 | $0.84 | 765 | $642.60 |
| August 2019 | $10,939.46 | $3.00 | 734 | $2,202.00 |
| September 2019 | $4,645.08 | $1.27 | 704 | $894.08 |
| October 2019 | $6,451.50 | $1.77 | 673 | $1,191.21 |
| November 2019 | $9,414.16 | $2.58 | 643 | $1,658.94 |
| December 2019 | $688.16 | $0.19 | 612 | $116.28 |
| **Total** | | | | **$10,644.35** |
| **ESTIMATED PERIOD: February 2021 through June 2021** | | | | |
| February 2021 | $9,275.23 | $2.54 | 187 | $474.98 |
| March 2021 | $9,275.23 | $2.54 | 156 | $396.24 |
| April 2021 | $9,275.23 | $2.54 | 126 | $320.04 |

| | | | | |
|---|---|---|---|---|
| May 2021 | $9,275.23 | $2.54 | 95 | $241.30 |
| June 2021 | $9,275.23 | $2.54 | 65 | $165.10 |
| **Total** | | | | **$1,597.66** |
| | | | | |
| **SHORTAGE PERIOD: October 2020** | | | | |
| October 2020 | $666.10 | $.18 | 307 | **$55.26** |
| **Total** | | | | **$55.26** |

See ECF Nos. 14-5, 14-6. Having reviewed plaintiffs' relevant records and calculations, it is respectfully recommended that the Court should award plaintiffs prejudgment interest in the amounts of **$10,644.35** for October 1, 2018 to December 31, 2020, **$1,597.66,** for February 2021 through June 2021, and **$55.26** for October 2020. Furthermore, I recommend that the Court should award plaintiffs interest on the unpaid contributions to be calculated based on the daily rates outlined above from October 8, 2021 through the date judgment is entered by the Court.

   ii.   **Late Payment Interest**

   Kore paid portions of what it owed plaintiffs in October 2020, but remitted payments past the deadline set forth in the CBA, and thereby incurred late payment interest. Pls. Mem. at 16; CBA at 25; Collection Policy at 3. Plaintiffs calculate late payment interest by multiplying contributions due ($15,483.60) by 10%, then dividing that amount by 365 to calculate the daily rate. Kabala Decl. ¶ 18. The daily rate is then multiplied by the number of days the contribution was paid late (here, 61 days). Defendant therefore owes plaintiffs late payment interest in the sum of $258.77. See ECF No. 15-2.[5] The Court has reviewed these documents and calculations and finds they support an award to plaintiffs of late payment interest in the amount of **$258.77.**

---

[5] (($52,990.48 x .10)/365) x 61 days = $258.77. Plaintiffs' calculation is $258.73, which may be due to rounding.

### C. Liquidated damages

ERISA permits the recovery of an amount not to exceed the greater of the interest on the unpaid contributions or liquidated damages as specified under the plan in an amount no greater than 20% of the unpaid contributions. 26 U.S.C. § 1132(g)(2); see also Triple A. Group, Inc., 708 F. Supp. 2d at 289. Here, the CBA provides that in the event the employer is liable for unpaid contributions, Kore would also owe liquidated damages of 10%. Pls. Mem. at 18; Suppl. Montelle Decl. ¶ 12. Defendant owed the Funds $52,990.48 in unpaid contributions for October 1, 2018 through December 31, 2020; an estimated $46,376.15 for February 2021 through June 2021; and $666.01 for the underpaid amount for the period October 2020, for a total of $100,032.64. Accordingly, I recommend that the Funds should be awarded **$10,003.26** as liquidated damages.

### D. Union Assessments and Dues Check Offs

#### i. Audit Findings

An audit of Kore for the period October 1, 2018 to December 31, 2019 revealed that Kore failed to pay union assessments of $3,182.51 and dues check-offs of $1,656.96, totaling $4,839.47. Pls.' Mem. at 9, 16–17; Castiglia Decl. ¶ 5. The amounts due are summarized in Table D below:

**Table D**

| Other Funds | Amount Due |
|---|---|
| Local 1010 Training Fund | $1,240.50 |
| NYS LECET | $164.68 |
| Laborers Health & Safety Fund | $102.65 |
| Local 1010 LECET | $1,178.48 |
| N.Y.S. Political Action Committee | $124.05 |
| Heavy Construction Industry Fund | $372.15 |
| **Total** | **$3,182.51** |
| | |
| Dues Check Offs | $1,656.96 |
| **Total** | **$4,839.47** |

<u>See</u> ECF No. 16-1. Accordingly, plaintiffs should be awarded **$4,839.47** in union assessments and dues check-offs for the audit period.

### ii.     Projected Delinquency

Plaintiffs also seek contributions for union assessments and dues check-offs for February 2021 through June 2021, according to the terms of the CBA. Pls. Mem at 17. As discussed in Part III. A. ii., plaintiffs determined that defendant owes $516.90 in unpaid union assessments and dues check-offs. <u>See</u> ECF Nos. 14-3, 14-4. Accordingly, plaintiffs request $516.90 per month for the five months defendant was delinquent in supplying remittance forms for a total of $2,584.50. Having reviewed the parties' Collection Policy and the record herein, the Court should award plaintiffs **$2,584.50** in union assessments and dues check-offs for this estimated period.[6]

### E.  Attorney's Fees

Section 502 of ERISA provides that a plaintiff may recover attorney's fees in any action to enforce a judgment to recover delinquent contributions. 29 U.S.C. § 1132(g)(2)(D). Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." <u>Simmons v. N.Y.C. Transit Auth.</u>, 575 F.3d 170, 172 (2d Cir. 2009). The Court determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a reasonable hourly rate." <u>Gesualdi v. Interstate Payroll Co., Inc.</u>, 2:14-CV-06780, 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections</u>, 522 F.3d 182,

---

[6] The Court notes that this is one cent more than plaintiffs' calculation, which may be attributable to a rounding error.

190 (2d Cir. 2008); <u>see</u> <u>also</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

 **i.**   **Rates**

 Hourly rates in the Eastern District of New York generally range "from $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." <u>Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D&A Bus Co., Inc.</u>, 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (collecting cases); <u>see also</u> <u>Trs. of Metal Polishers Local 8A-28A Funds v. Nu Look Inc.</u>, No. 18-CV-3816, 2019 WL 3500908, at *5 (E.D.N.Y. July 31, 2019) (citations omitted); <u>Trs. of Empire State Carpenters Annuity v. C.R. Edwards Constr. Co., Inc.</u>, No. 15-CV-5232, 2016 WL 6875969, at *5 (E.D.N.Y. Nov. 22, 2016). "Awards for paralegal fees in this district typically range from $70 to $90 per hour in ERISA default actions." <u>Trs. of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund v. Temperini Mech. Inc.</u>, No. 18 CV 2596, 2020 WL 571680, *4 (E.D.N.Y. Jan. 13, 2020), <u>report and recommendation adopted</u> by 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020).

 Plaintiffs are represented by Virginia & Ambinder, LLP ("V&A"). Grancio Aff. ¶ 1. Plaintiffs request an hourly rate of $250.00 for attorney Adrianna Grancio. <u>Id.</u> ¶ 10. Ms. Grancio is an associate at V&A and a 2016 graduate of St. John's University School of Law. <u>Id.</u> Ms. Grancio has handled "several" ERISA collection actions. <u>Id.</u> Plaintiffs request an hourly rate of $80.00 for legal assistants Emily Barsamian, Julia Burstein, Morgan Behrens, and Eva Codispoti. I find the requested hourly rates to be reasonable and in line with previous awards in this district.

See, e.g., Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc., No. 19-CV-2487, 2020 WL 6051097, at *9 (E.D.N.Y. Aug. 25, 2020) (approving $250 per hour for Ms. Grancio and $80 per hour for her legal assistants); Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19-CV-2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020) (same).

### ii.   Hours

After the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number of hours the attorney expended to determine a presumptively reasonable fee. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437).

A request for attorney's fees must be "supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-0399, 2013 WL 802034, at *4 (E.D.N.Y. Jan. 16, 2013), report and recommendation adopted by 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Here, plaintiffs requests 12.2 hours of attorney time and 5.5 hours of legal assistant time. Mem. at 18; History Bill for the Court ("Bill"), ECF No. 17-4. This is reasonable. Moreover, plaintiffs have submitted contemporaneous billing records setting forth the amount of time spent rendering services, the dates services were rendered, the hourly rate charged for the services, the

name of the attorney or paralegal who rendered services, and a description of the services performed. See ECF No. 17-4. Accordingly, I respectfully recommend that the Court should award plaintiffs **$3,490.00** in attorney's fees.[7]

### F. Audit Fees

Plaintiffs request $4,275.00 for the cost of the audit in accordance with the applicable provisions of the CBA. Pls. Mem. at 17; CBA at 27. Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E) and regularly award reasonable audit costs. See, e.g., Gesualdi v. Andrews Trucking Corp., No. 09-CV-565, 2010 WL 2292218, at *7 (E.D.N.Y. May 14, 2010), report and recommendation adopted by 2010 WL 2292392 (E.D.N.Y. June 3, 2010) (awarding plaintiffs $13,382.50 in audit fees). "Requests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of audit costs." Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc., No. 08-CV-3214, 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotation marks and citations omitted). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." Gesualdi v. Diversified Carting, Inc., No. 10-CV-2561, 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted). Here, auditors worked 45 hours to prepare the Audit Report at an hourly rate of $95.00. Castiglia Decl. ¶ 20. Accordingly, I respectfully recommend that plaintiffs should be awarded **$4,275.00** for the cost of the audit.

---

[7] ($250.00 x 12) + ($80.00 x 5.5) = $3,490.00.

**G. Costs**

"In a successful action under ERISA to recover delinquent contributions, courts award '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'" Trs. of Plumbers Local Union No. 1 v. Temperini Mech., Inc., No. 12 Civ. 05646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). The party requesting reimbursement of its costs must provide the court with adequate documentation "not only showing costs were incurred, but that they were paid." Markey v. Lapolla Indus., Inc., No. 12 CV 4622, 2017 WL 9512407, at *8 (E.D.N.Y. Aug. 24, 2017), report and recommendation adopted by 2017 WL 4271560 (E.D.N.Y. Sept. 26, 2017).

Plaintiffs request a total of $475.00 in costs, including the $402.00 court filing fee and a $73.00 service of process fee. Grancio Decl. ¶ 15; Bill at 4. Plaintiffs submit an affidavit from plaintiffs' counsel stating that the total recoverable costs are $475.00, Grancio Decl. ¶ 15. Plaintiffs have not provided receipts for these expenses. The Court may take judicial notice of the filing fee in this district and verify payment of the fee on the docket. Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs v. Coastal Envtl. Grp Inc., No. 18-CV-5791, 2019 WL 5693916, at *12 (E.D.N.Y. Aug. 30, 2019) (citing Shalto v. Bay of Bengal Kabob Corp., No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) report and recommendation adopted by Order (E.D.N.Y. Mar. 31, 2020). Here, the docket reflects payment of the $402 filing fee. Process server fees, however, must be supported by the record. See Martinez v. Alimentos Saludables Corp., No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will

limit, or even defeat, recovery"), report and recommendation adopted by 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017). Plaintiffs have not provided proof of the process server's fee. Accordingly, I recommend that the Court should award plaintiffs costs of **$402.00** and should deny the request for $73.00 without prejudice. Plaintiffs may supplement the record with proof of the process server's fee within fourteen days of this Report.

### H. Post-Judgment Interest

Plaintiffs also request an award of post-judgment interest. Pls. Mem. At 20–21. "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." Trustees of the Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc., No. 15-CV-3898, 2016 WL 6110455, at *11 (E.D.N.Y. Aug. 1, 2016) (internal quotation marks omitted) (quoting Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996)), report and recommendation adopted by 2016 WL 4764909 (E.D.N.Y. Spt. 12, 2016). The rate of post-judgment interest in an ERISA action is set forth in 28 U.S.C. § 1961(a). Id. Accordingly, I recommend that plaintiffs should be awarded post-judgment interest in accordance with the provisions of 28 U.S.C. § 1961(a).

### CONCLUSION

It is respectfully recommended that plaintiffs' motion for a default judgment should be granted. Plaintiffs should be awarded: $52,990.48 in unpaid contributions and $4,839.47 in union assessments and dues check offs for the period October 1, 2018 through December 31, 2020; $46,376.15 in unpaid contributions and $2,584.50 in union assessments and dues check offs for the period February 2021 through June 2021; $666.10 in unpaid contributions due October 2020 and $258.77 in late payment interest for October 2020 payments; $10,003.27 in liquidated damages; $12,297.27 in prejudgment interest and additional prejudgment interest calculated based

on the daily rates set forth in this Report from October 8, 2021 through the date judgment is entered by this Court; $4,275.00 for the cost of the audit; post-judgment interest in accordance with the provisions of 28 U.S.C. § 1961(a); $3,490.00 in attorney's fees; and $402.00 in costs. The Court should deny plaintiffs' request for $73.00 in costs. Plaintiffs may supplement the record to support its request for $73.00 in costs within fourteen days of this Report. Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known address and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.


_____/S/_____
LOIS BLOOM
United States Magistrate Judge


Dated: April 5, 2022
       Brooklyn, New York